## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PPS DATA, LLC, a Nevada limited liability
company,

          Plaintiff,

                                            Case No. 3:11-cv-273-J-99-MMH-TEM

v.

ALLSCRIPTS HEALTHCARE SOLUTIONS,
INC., a Delaware corporation;
ATHENAHEALTH, INC., a Delaware
Corporation; AVAILITY, LLC, a Florida
limited liability company; AVISENA, INC., a
Florida corporation; CAPARIO, INC., a
Delaware corporation; and REALMED
CORPORATION, a Delaware corporation,

          Defendants.

_____/

**PLAINTIFF PPS DATA, LLC'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FED.R.CIV.P. 12(b)(6), OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

      PPS Data, LLC ("PPS") submits this memorandum in opposition to Athenahealth,

Inc.'s ("Defendant"), Motion to Dismiss the Complaint, or, in the alternative, for Summary

Judgment ("Motion").

## I. INTRODUCTION

      Defendant filed the Motion prematurely seeking to have this Court decide factual and

claim construction issues that are properly reserved for another day.  U.S. Patent 6,343,271

("the '271 Patent"), entitled "Electronic Creation, Submission, Adjudication, and Payment of

Health Insurance Claims" enjoys the presumption of legal validity.  35 U.S.C. § 282.  There

is no dispute by Defendant that PPS has properly plead that Defendant has infringed

including, but not limited to claims 1, 2, 7, 10, 12, 17, 18, and 19 of the '271 Patent.  Under

any view of the law and pleadings, PPS has made more than sufficient allegations against Defendant.   Nonetheless, Defendant seeks to have this Court decide issues of claim construction, make factual determinations, and find that Defendant does not infringe the '271 Patent pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]   Unfortunately, Defendant has not cited a single case where a court has dismissed patent infringement claims at this early stage of an action pursuant to Rule 12(b)(6), and particularly not where a Defendant asks the Court to rely upon extrinsic evidence to do so.   That is because Defendant's requested dismissal is inappropriate.   Alternatively, Defendant requests that its Motion be considered one for summary judgment pursuant to Rule 56(a).   This request is made despite the fact that no fact or expert discovery has taken place, no *Markman* proceedings have been initiated, and the record before the Court consists of a single, self-serving declaration of a witness who has yet to be deposed or subject to cross examination.

This memorandum demonstrates that PPS has sufficiently plead allegations against Defendant, such that Defendant's Motion must be denied.   As will be fully set forth below, the Court should treat Defendant's Motion as one for summary judgment because Defendant relies upon material that is outside of the scope of the pleadings to support its erroneous assertions.   Consequently, Defendant's motion must be denied because there are genuine disputed issues of material fact as to whether Defendant's "AthenaCollector System" ("Accused Product") infringes claims including, but not limited to, 1, 2, 7, 10, 12, 17, 18, and 19 of the '271 Patent.

## II.  FACTUAL BACKGROUND

As indicated in the corporate disclosure statement (Dkt. No. 4), PPS, formerly known as NetDeposit, LLC ("NetDeposit"), is a limited liability company owned by Zions Bancorporation ("Zions"), a large publicly-traded corporation.   (*See* Declaration of Jeff Johnson attached hereto as Exhibit A ("Johnson Decl."), ¶ 4.)   Yet, Defendant would have

---

[1] The Federal Rules of Civil Procedure are hereinafter referred to as the "Rules."

this Court believe that PPS is a patent troll seeking only a nuisance value settlement from the named Defendants. These irrelevant and unsupported allegations could not be further from the truth.

As an industry participant, Defendant knows or should know that until 2010, PPS was part of a conglomerate of companies such as P5, Inc. and MP Technologies dba Modern Payments ("MP"). (*Id.* at ¶ 5.) Founded in 1997, P5 was at the forefront of developing innovative online medical billing systems and services. (*Id.* at ¶ 6.) The '271 Patent encompasses technology developed by P5 prior to P5's merger into NetDeposit in 2008. (*Id.* at ¶ 7.) From 1997 until 2008, P5 secured a number of U.S. Patents. (*Id.* at ¶ 8.)

PPS offers technology, tools, and services that provide medical service and product providers tools to manage and improve their revenue cycle. (*Id.* at ¶ 9.) For example, PPS' ProviderPay product is a web-based service that transformed the way pharmacies manage their claim and payment data. (*Id.* at ¶ 10.) Indeed, PPS's ProviderPay product is a robust and valuable service in the pharmacy management industry. (*Id.*) Specifically, ProviderPay automates and accelerates many of the tasks required to manage the financial side of the pharmacy, such as reconciling claims to remittances, connecting to and managing electronic payers, and compiling key information for pharmacy action. (*Id.* at ¶ 11.) ProviderPay delivers comprehensive payment acceptance and reconciliation tools for pharmacies. (*Id.*)

Defendant previously made representations to this Court demonstrating its knowledge of the '271 Patent and PPS. For example, in *Billingnetwork Patent, Inc. v. Athenahealth, Inc.*, Civil No. 8:05-cv-00205-EAK-TGW (M.D. FL.), Defendant filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment. (*See* Civil No. 8:05-cv-00205-EAK-TGW, Dkt. No. 18.) In connection with its motion to dismiss in *Billingnetwork*, Defendant relied upon the '271 Patent as an example of early art in this field of technology. (*See e.g.*, Declaration of Matthew Triggs at ¶7, Civil No. 8:05-cv-00205-EAK-TGW (M.D. FL.), Dkt. No. 21); Motion to Dismiss, or, in the alternative, for Summary Judgment at 4 (Civil No. 8:05-cv-00205-EAK-TGW (M.D. FL.), Dkt. No. 18); and Reply Memorandum at pg. 6 (Civil

No. 8:05-cv-00205-EAK-TGW (M.D. FL.), Dkt. No. 29).)   When facing allegations of infringement by a third party, the '271 Patent is held out as an example of early art and relied upon by Defendant.  Conversely, now facing allegations of infringement by PPS, Defendant quickly changes its story and would have this Court believe the '271 Patent is nothing more than a "feature" patent issued in an allegedly already overly crowded field of art.

In July of 2009, NetDeposit filed suit in Delaware against Defendant and others ("Delaware Action").  (Ex. 1 at ¶ 12.)  Concurrent with the Delaware Action, NetDeposit was involved in other complex patent litigation matters.  (*Id.* at ¶ 12.)  Due to the financial burden of multiple pending litigations, NetDeposit elected not to serve the complaint it filed against Defendant at that time and instead dismissed the complaint without prejudice as to all parties in that case, not just Defendant.  (*Id.* at ¶ 13.)  PPS's dismissal was in no way related to any information Defendant provided at that time.  (*Id.* at ¶ 13.)  As other litigation matters have been resolved, PPS now has the resources to enforce the intellectual property portfolio it has acquired as a result of its substantial innovation since 1997.

When Defendant became aware of the '271 Patent in 2005, which patent was again brought to Defendant's attention in the Delaware Action in 2009, Defendant should have voluntarily chosen to respect PPS's intellectual property rights instead of willfully infringing the '271 Patent and compelling PPS to enforce its rights.

## III.  DISPUTED FACTS

Defendant does not contend that the '271 patent is invalid.  Instead, Defendant contends that the Accused Product does not "test whether a health insurance claim is to be 'manually adjudicated' or 'automatically adjudicated.'"  (*See* Defendant's Memorandum at 18.)  The evidence of record illustrates that there is a dispute of material fact because the Accused Product clearly tests, determines, and notifies the user whether a claim is to be subject to further scrutiny  or denied (*i.e.*, manually adjudicated) or in a condition to be paid (*i.e.*, automatically adjudicated).  (Ex. 1 at ¶ 14.)  Moreover, PPS is entitled to obtain

additional evidence through discovery due to the nature of the Accused Product[2] and the necessity of considering inventor and expert testimony and other materials obtained through discovery prior to the Court construing relevant terms of the '271 Patent.

## IV.  ARGUMENT

### A.  Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Rule 12(b) provides "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Clearly, Defendant asserted matters outside of the pleading in support of its motion, including, *inter alia*, the prosecution history of the '271 Patent.  Accordingly, the Court should treat the instant motion as a motion for summary judgment if it does not exclude Defendant's asserted external information.

In the event that the Court decides to treat Defendant's motion as a motion for summary judgment, then judgment may only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact.  *Security and*

---

[2] The Accused Product is not an off-the-shelf product.  Consequently, PPS has no way to verify Defendant's representations regarding the Accused Product or provide access to its expert witnesses and the inventors of the '271 Patent to the Accused Product.

*Access (Electronic Media), Ltd. v. Nokia, Inc.*, 1997 U.S. Dist. LEXIS 4058 *2 (M.D. Fla. 1997)(citation omitted). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* (citation omitted). Factual disputes preclude summary judgment. *Id.*

**B.     Dismissal of PPS's Patent Claim or Summary Judgment of Non-Infringement is Improper**

The basis of Defendant's attack on PPS's infringement action is that, under Defendant's proposed construction of the terms "automatically adjudicated" and "manually adjudicated," the Accused Product allegedly does not incorporate the "automatically adjudicated" or "manually adjudicated" limitations. Validity of the '271 Patent is presumed and not contested for purposes of the Motion. *See* 35 U.S.C. § 282. Moreover, claim construction is premature and the question of whether or not the Accused Product infringes the '271 Patent is one of fact. Neither issue should be decided pursuant to Rule 12(b)(6). Consequently, the Court should decline to dismiss PPS's claims against Defendant at this stage. Moreover, as genuine issues of material fact exist, as well as overwhelming evidence that the Accused Product meets the limitations in question, the Court should deny Defendant's motion for summary judgment of non-infringement of the '271 Patent.

*1.   Defendant's Request for Dismissal Pursuant to Rule 12(b)(6) Should Be Denied.*

The United States Supreme Court has recently held that, as here, a complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added). In that regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Tested against these standards, PPS has more than stated legally-viable claims against Defendant.

Indeed, PPS's Complaint exceeds the plausibility standards set forth in *Iqbal* and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the Court noted that the plausibility

standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the [defendant's misconduct]." *Id.* at 556. Furthermore, when evaluating a motion to dismiss under Rule 12(b)(6), all facts plead by the plaintiff must be accepted as true. *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 936 (Fed. Cir. 2003); *see also Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) ("In reviewing a Rule 12(b)(6) motion to dismiss, we treat all well plead allegations in the complaint as true, and we find dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him or her to relief.") (emphasis added, internal quotations omitted).

Defendant would have this Court dismiss this case before the Accused Product can be fully evaluated through discovery. That notion turns pleading, discovery, and ultimate proof requirements on their heads. The plausibility standard is not the same as the evidentiary probability requirement. *See Iqbal*, 129 S. Ct. at 1949. PPS will prove the elements of infringement after claim construction and discovery. *See TransAmerica Corp. v. Moniker Online Servs., LLC*, No. 09-60973, 2009 WL 4715853 * (S.D. Fla. Dec. 4, 2009) (denying motion to dismiss when defendants' basis for motion went to matters of proof, not to the necessary elements of the claims).

In order to grant Defendant's present motion, the Court must both adopt Defendant's construction of certain limitations of the '271 Patent and conclude that the Accused Product cannot infringe any claim of the '271 patent because it allegedly does not test whether any health insurance claims will be manually or automatically adjudicated. This is simply impossible to do without construing claim language and considering external evidence. When all facts as plead by PPS are accepted as true, there is no question that PPS has plead a plausible claim. Defendant's motion focuses solely on evidentiary probability, not plausibility. Consequently, Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be denied.

2.   *The Claim Construction Process is Unsuited for a Motion to Dismiss*

To resolve an allegation of patent infringement, "[t]he court must first interpret the claim and determine the scope and the meaning of the asserted patent claims, and then compare the properly construed claims to the allegedly infringing device." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed.Cir. 2004). "While it is true that claim construction is a matter of law to be determined by the Court, the process for properly construing a patent claim is unsuited for a motion to dismiss." *See Deston Therapeutics LLC v. Trigen Labs. Inc.*, 2010 WL 2773317 (D. Del.).

In *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), the Federal Circuit described the claim construction process:

> "To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991); *accord Autogiro Co. of Am. v. United States*, 181 Ct. Cl. 55, 384 F.2d 391, 396-98, 155 U.S.P.Q. (BNA) 697, 701-03 (Ct. Cl. 1967). "Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used." *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631 (Fed. Cir. 1987). *Id.* at 979. "The court may, in its discretion, receive extrinsic evidence in order 'to aid the court in coming to a correct conclusion' as to the 'true meaning of the language employed' in the patent." *Id.* at 980; *see Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1377 (Fed. Cir. 2009) ("The court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.")

As a consequence, courts have systematically declined to construe patent claims on a motion to dismiss. *See, e.g., In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 09-2050, 2010 U.S. Dist. LEXIS 16110, at *12 (S.D. Ohio Feb. 23, 2010); *Yangaroo Inc. v. Destiny Media Techs.*, No. 09-462, 2009 U.S. Dist. LEXIS 82052, at *7-8 (E.D. Wis. Aug. 31, 2009); *Bird Barrier Am., Inc. v. Bird-B-Gone, Inc.*, No. 09-0418, 2009 U.S. Dist. LEXIS 125475, 7-8 (C.D. Cal. Mar. 1, 2009); *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 920 (D. Md. 2008); *Cima Labs, Inc. v. Actavis Group HF*, No. 06-1999, 2007

U.S. Dist. LEXIS 41516, at *8-9 (D.N.J. June 7, 2007); *Schreiber v. Eli Lilly & Co.*, No. 05-2616, 2006 U.S. Dist. LEXIS 13477, at *17 (E.D. Pa. Mar. 27, 2006).   This case is no different.   The Court should not construe claims in connection with Defendant's motion to dismiss and should, therefore, deny Defendant's motion.

Courts should not dismiss patent infringement actions prior to claim construction. *See, e.g., OLA, LLC v. Builder Homesite, Inc.*, No. 2:08-cv-324, 2009 WL 3190443 (E.D. Tex. Sept. 29, 2009) (denying motion to dismiss contributory patent infringement claim where claims terms have not yet been construed); *Yangaroo Inc. v. Destiny Media Techs., Inc.*, No. 09-C-42, 2009 WL 2836643 *4 (E.D. Wis. Aug. 31, 2009) (denying motion to dismiss where "motion to dismiss for failure to state a claim necessarily entails a construction of the claim, which is inappropriate given the infancy of these proceedings."). Defendant's motion demonstrates that they have a different interpretation of the terms "automatically adjudicated" and "manually adjudicated" than PPS.   The Court should construe the claim language before determining what evidence is required for infringement.   Claim construction at this stage, without the benefit of discovery, is inappropriate.

*Yangaroo* is squarely on point.   In that case, the plaintiff alleged that defendant infringed its process patent by selling, or offering to sell, products and services that enable others to infringe the patent. *Id.* at *2.   The defendant moved to dismiss.   The plaintiff noted that the defendant's motion sought "to resolve claim construction and infringement as a matter of law without the benefit of discovery." *Id.*   The court agreed and found that the resolution of the issues presented was not appropriate on a motion to dismiss. *Id.* at *4.   The court noted that though it may ultimately adopt the claim construction advanced by the defendant, "based upon the thin record before me, I leave for another day construction of the claimed method." *Id.*   Like the plaintiff in *Yangaroo*, PPS has plead sufficient facts regarding infringement.   Defendant's arguments are geared towards claim construction and proof of infringement.   Defendant's motion is a thinly-veiled attempt to avoid the merits. The motion should be denied.

Defendant asserts concerns regarding litigation costs and judicial efficiency. (*See* Defendant's Memorandum, 3.) Claim construction is generally performed through the claim construction process, which leads up to and includes a *Markman* hearing. For the purposes of patent case management, courts often require early disclosures of the parties' contentions of infringement and non-infringement, together with the exchange of relevant documents. The parties are called upon to exchange proposed terms for claim construction, followed by the exchange of preliminary claim construction and extrinsic evidence, and then their joint claim construction and prehearing statement, including a summary of construction experts' reports, preparatory to the *Markman* hearing. Following such standard procedures promotes both ***early*** and ***reliable*** claim constructions by a court. "These *Markman* processes recognize that typically … the complaint and the patent's language are ***necessary but insufficient*** components of the record for claim construction." *See Deston Therapeutics LLC v. Trigen Labs. Inc.*, 2010 WL 2773317 (D. Del.)(emphasis added). To enhance the efficiency of litigation, it may be prudent for the parties to agree upon the few key terms that need to be construed on an expedited basis, saving others for the Court's attention, if necessary, at a later date before trial. *See* Peter S. Menell, et al., PATENT CASE MANAGEMENT JUDICIAL GUIDE (Federal Judicial Center 2009) at § 5.2.3.1.3. This topic may be addressed by the parties with scheduling.

Given the current posture of this case, where no discovery has occurred, it is imprudent to attempt to construe the relevant claims at this time. Nonetheless, this is exactly what Defendant's Motion improperly seeks to do. As such, dismissal of Defendant's motion is appropriate.

### 3. Defendant's Request for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a) Should Be Denied.

Disputed issues of material fact preclude a finding of summary judgment. Defendant asserts the Accused Product is missing the "automatically adjudicated" and "manually adjudicated" limitations. PPS disagrees with Defendant's position on this material fact. The

Accused Product clearly tests, determines, and notifies the user whether a claim is to be denied or subject to further scrutiny (*i.e.* manually adjudicated) or in a condition to be paid (*i.e.* automatically adjudicated). (Ex. 1 at ¶ 15.) Since Defendant asserts its product is missing certain limitations required by the claims of the '271 Patent, an evaluation of Defendant's product is particularly appropriate. Unfortunately, the Accused Product is not an off-the-shelf product available for typical consumer purchase. (*Id.* at ¶ 16.) The Accused Product constitutes an online product offering accessible only by subscribers to the product. (*Id.*) Even if PPS had access to the Accused Product, it is unclear if PPS could test the Accused Product without violating HIPAA.[3] In short, discovery is necessary for PPS, the inventors of the '271 Patent, and PPS's experts to verify the functionality of the Accused Product. Access to the Accused Product is also necessary for PPS to offer evidence in support of PPS's claim construction, particularly where publicly-available information clearly indicates that the limitations in question are present.

At this early stage of the litigation, the Court is left to rely solely upon Defendant's public representations regarding the functionality of the Accused Product, marketing materials, and self-serving statements attempting to limit the functionality of the Accused Product. As stated herein, the scant evidence before the Court raises substantial issues of material fact which preclude summary judgment. Indeed, this case hardly represents a record ripe for adjudication on the merits pursuant to Rule 56(a), particularly at this infant stage of the litigation. The Federal Circuit has overturned summary judgment and allowed plaintiffs to pursue claims of infringement even though the actual evidence of infringement may be "sparse and not altogether clear." *Linear*, 373 F.3d at 1326. In the present case, the Court should allow PPS to pursue its claims of infringement.

---

[3] In order for PPS to determine whether the Accused Product informs the user of whether a claim is in a condition to be paid (i.e. automatically adjudicated) or subject to further scrutiny or denied (i.e. manually adjudicated), PPS would need a person having a claim, the claimant's name and other identifying information, CPT codes (a diagnosis code and a treatment code) , and other information required for the claim. As such information is subject to HIPAA privacy rules, it is unclear how PPS could test functionality without the consent of a patient and the consent of the applicable Defendant, in this case Athenahealth.

### 4. *The Accused Product Satisfies the Manual Adjudication and Automatic Adjudication Limitations of the Asserted Claims*

Defendant asserts that "[t]he '271 patent, which is directed to an electronic claims processing system for the medical profession, was filed in July 1998, long after medical claims processing systems were well-known in the industry. Indeed, if the '271 patent describes any innovation at all in view of the significant prior work by others in this field, it is at best an extremely narrow patent covering one particular implementation of a health insurance claims processing system." (Defendant's Memorandum, 4.) Defendant provides no evidence in support of this statement. In fact, as demonstrated above, Defendant has utilized the '271 Patent in prior litigation as an example of early art in the field. (*See Billingnetwork Patent, Inc. v. Athenahealth, Inc.*, Civil No. 8:05-cv-00205-EAK-TGW (M.D. FL.).) Yet, Defendant would now have the Court accept its unsupported statement above as true and limit the breadth of the '271 Patent claims accordingly. This glaring contradiction is strong evidence of the need for further discovery and information prior to construing claims or adjudicating this matter summarily.

Should the Court deem it proper to construe the terms "manual adjudication" and "automatic adjudication" at this stage of the litigation, PPS asserts that the broadest possible construction of the terms is appropriate for purposes of the present motion. Under this standard, the Accused Product infringes the '271 Patent. The Accused Product tests the adjudication status of a claim. The Accused Product is a medical billing software product that allows medical professionals to submit claims to insurers or other third parties for payment. (Ex. 1 at ¶17.) Defendant's own marketing literature boasts that the Accused Product houses a "[u]nique and powerful rules database embedded in your practice management software, providing continuous updates to insurance rules, so your claims go out clean and get paid the first time." (*Id.* at ¶ 18.) In short, when a medical professional seeks to submit a claim for payment, the Accused Product first determines whether the claim

12

will be subject to further scrutiny or denied (*i.e.* manually adjudicated) or is in a condition to be paid (*i.e.* automatically adjudicated).

The publicly-available language cited above regarding the functionality of the Accused Product supports PPS's case of infringement.  Indeed, the specification of the '271 Patent states as follows:

> "One function of the automated adjudication system is to perform a precheck process on claims before submission. When a health care provider contemplates providing treatment to a patient and submitting a claim to the patient's insurer for payment, the precheck process may be used to determine whether the claim may be automatically adjudicated or must instead by manually adjudicated. For example, the precheck process involves comparing the diagnosis and the proposed or actual treatment against a benefits database that contains information relating to currently accepted medical practice, the contractual arrangements between the patient, the insurer, and the health care provider, and the patient's medical history. If the precheck process indicates that a claim based on the diagnosis and proposed treatment would be automatically adjudicated, the health care provider is informed of this result. If however, the proposed claim is consistent with fraud, unintentional error, or if for some other reason the insurer would subject the claim to a more thorough review, the health care provider is informed that manual adjudication is to be conducted."

(*See* United States Patent No. 6,343,271, Col. 4, lns 21-38, attached hereto as Exhibit B.)  In sum, if the pre-check process concludes a claim is in a condition to be paid, it has made the determination that the claim will be automatically adjudicated.  On the other hand, if the pre-check process concludes a claim will be subject to further scrutiny or denied, it has determined that the claim will be manually adjudicated.  (*See id.*)  The Accused Product is specifically marketed by Defendant as having the capability to inform the user whether a claim is in a condition to be paid or if it will be rejected or subjected to further scrutiny based upon a determination made by comparing the proposed claim to the Accused Products' "Rules Engine." (Ex. 1 at ¶ 19.)  Defendants heavily market the advantage of having the claims pre-checked against the Rules Engine.  (*Id.*)

The marketed advantage of a pre-checked claim is clear – the claim can be corrected to avoid further scrutiny and/or denial leading to faster payment of the claim.  Clearly, under

any rational construction of the claims at issue, the Accused Product satisfies these limitations. In order to prevail, it appears Defendant would have this Court construe the claim to require the Accused Product to literally inform the user that its claim will be "manually adjudicated" or "automatically adjudicated," utilizing the specific words "manual adjudication" and "automatic adjudication" themselves. Such a narrow reading is not supported by the specification, the prosecution history, or the scant evidence currently before the Court. Moreover, as the Accused Product is not an off-the-shelf product available for regular consumer purchase, PPS is unable to determine whether the specific words "manual adjudication" and "automatic adjudication" are even used. At a minimum, PPS has demonstrated the impropriety of a dismissing the instant action. In reality, PPS has demonstrated that under any rational reading of these limitations, said limitations are satisfied by the Accused Product.

### 5. PPS's Declaration Set Forth Sufficient Facts to Preclude a Finding of Summary Judgment of Non-Infringement

The declaration of PPS's Jeff Johnson alone precludes summary judgment. *Tillotson, Ltd. V. Walbro Corp.*, 831 F.2d 1033, 1039 (Fed. Cir. 1987) (summary judgment motion vacated for failure to consider extrinsic evidence). Accordingly, PPS has put forth sufficient evidence to defeat Defendant's motion for summary judgment. Moreover, there is no doubt that additional extrinsic evidence, such as expert testimony and inventor testimony, will be helpful in understanding the technical aspects of the '271 Patent. This is particularly true where the parties have presented two different constructions of the relevant patent claims. Accordingly, the Court must deny Defendant's motion for summary judgment and allow discovery to proceed to resolve the underlying issues of material fact. *See* Fed.R.Civ.P. 56(f).

## C.   Defendant's Allegations of Misjoinder Are Irrelevant to the Present Motion

In a footnote, Defendant suggests that Defendant has been improperly joined to this action pursuant to Rule 20(a). Defendant has not moved the Court to take action in this

14

regard.  We note, however, that Courts have broad discretion in deciding a motion to transfer under Rule 20.  *See e.g. Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995).  Rule 20's central purpose is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.  *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).  The Supreme Court's liberal approach to permissible joinder seeks to "[entertain] the ***broadest possible scope of action*** consistent with fairness to the parties; joinder of claims, parties and remedies is ***strongly encouraged***."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)(emphasis added).  If challenged, PPS will conclusively demonstrate that joinder of Defendant in this action comports with Rule 20(a).

## V. CONCLUSION

For the foregoing reasons, PPS respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety or, in the alternative, deny Defendant's Motion for Summary Judgment in its entirety.  PPS further requests that the Court grant any such further relief as the Court deems just and proper.

Dated:  April  29 , 2011                Respectfully Submitted,

                                    LILES, GAVIN, COSTANTINO, GEORGE
                                        & DEARING, P.A.

                                    By: /s/ Rutledge R. Liles
                                            RUTLEDGE R. LILES
                                            Florida Bar No. 102805
                                            Email: rliles@lilesgavin.com
                                            225 Water Street, Suite 1500
                                            Jacksonville, FL 32202
                                            T: 904-634-1100
                                            F: 904-634-1234
                                            TRIAL COUNSEL
                                            *Attorneys for Plaintiff*

                                                    -and-

                                      James B. Belshe, Esq.
                                      (Pro Hac Vice Application Pending)

Dax D. Anderson, Esq.
(Pro Hac Vice Application Pending)
James T. Burton, Esq.
(Pro Hac Vice Application Pending)
Jackie Pilling, Esq.
(Pro Hac Vice Application Pending)
KIRTON & MCCONKIE, P.C.
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111
(801) 328-3600 Telephone
(801) 321-4893 Facsimile
jbelshe@kmclaw.com
danderson@kmclaw.com
jburton@kmclaw.com
jpilling@kmclaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29 th , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the list below in the manner specified, either via facsimile or via U.S. Mail, to those counsel or parties who are not authorized to receive documents via electronic filing.

Michael T. Fackler, Esq.
Milam, Howard, Nicandri, Dees & Gillam
14 E.  Bay Street
Jacksonville, FL 32202
*Attorneys for Allscripts Healthcare, LLC*
*Solutions, Inc.*

Jeremy P. Oczek, Esq.
Steven M. Bauer, Esq.
Proskauer Rose
One International Place
Boston, MA 02110
*Attorneys for Althenahealth, Inc.*

Simeon D. Brier, Esq.
Edwards Angell Palmer & Dodge
525 Okeechobee Blvd., Suite 1600
West Palm Beach, FL 33401
*Attorneys for Avisena, Inc.*

Peter C. Schechter, Esq.
Edwards Angell Palmer & Dodge
750 Lexington Avenue
New York, NY 10022
*Attorneys for Avisena, Inc.*

Jonathan Galler, Esq.
Proskauer Rose, LLP
2255 Glades Rd., Suite 340 W
Boca Raton, FL 33431
*Attorneys for Athenahealth, Inc.*

Matthew Triggs, Esq.
Proskauer Rose, LLP
2255 Glades Rd., Suite 421 Atrium
Boca Raton, FL 33431
*Attorneys for Athenahealth, Inc.*

Dale Lischer, Esq.
Elizabeth G. Borland, Esq.
Smith Gambrell & Russell, LLP
50 N. Laura Street,  Suite 2600
1230 Peachtree Street, NE
Atlanta, GA 30309
*Attorneys for Availity, LLC and*
  *RealMed Corporation*

Scott Stephen Gallagher, Esq.
Smith Gambrell & Russell, LLP
Promenade 2, Suite 3100
Jacksonville, FL 32202
*Attorneys for Availity, LLC*
  *and RealMed Corporation*

H. William Larson, Jr., Esq.
Justin Paul Miller, Esq.
Nathan P. Suedmeyer, Esq.
Larson & Larson, PA
11199 69th Street, N.
Largo, FL 33773
*Attorneys for Capario, Inc.*

Michael R. Henson, Esq.
Holland Hart
555 Seventeenth Street, Suite 3200
Denver, CO 80202-5432
*Attorneys for Capario, Inc.*

David Frey, Esq.
Drinker, Biddle & Reath
191 N. Wacker Dr., Suite 3700
Chicago, IL 60606-1698
*Attorneys for Allscripts Healthcare Solutions,*

_____/s/ Robert B. George_____
Attorney